CHIEF JUSTICE GRAY,
dissenting.
¶43 Notwithstanding my agreement with virtually everything in the first 37 paragraphs of the Court’s 42-paragraph opinion, I respectfully dissent from that opinion. In doing so, it is important to state without equivocation my total agreement that, under our jurisprudence, a criminal conviction cannot be sustained where the only evidence of an essential element of the offense is a prior inconsistent statement. I also agree that evidence of flight is not sufficient on a stand-alone basis to prove guilt.
¶44 Having agreed with those basic principles at issue here, I observe that, while much of the Court’s discussion is of interest from an intellectual standpoint, little of it bears on the issue presently before us. Indeed, the only pertinent facts in ¶¶ 16 though 22 of the Court’s opinion are that, under Rule 801(d)(1)(A), M.R.Evid., prior inconsistent statements are not hearsay in this state and may be admitted as substantive, direct evidence. It is difficult to discern the reason for the rest of the Court’s lengthy discussion in these paragraphs, except that it may indicate the Court’s displeasure with the Montana rule. Nonetheless, Rule 801(d)(1)(A), M.R.Evid., is our Rule and it-rather than the federal rule, concerns of “commentators” or different approaches in other states-is at issue here.
¶45 Similarly, the Court’s discussion of the “reliability” question in federal case law and other jurisdictions at ¶¶ 23 through 29, insofar as it relates to prior inconsistent statements as the sole evidence of an element of a criminal offense, is largely extraneous. This Court’s jurisprudence on the issue is contained in White Water, and that principle is that a criminal conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement, because such a statement generally is unsworn. As to the Court’s lengthy discussion of both other jurisdictions’ case law and White Water in this regard, it is based on the premise that the prior inconsistent statements are the only evidence of an element of the charged offense. That is not the situation in the present case.
¶46 Simply stated, the prosecution in this case presented substantial evidence identifying Giant as the assailant. As the Court states, Deborah’s multiple prior statements to that effect are direct and substantive evidence of the identity of her assailant. While that evidence standing alone-that is, without corroboration-is insufficient to go to the jury on the identity element of the charged offense, the *93 prosecution also presented circumstantial evidence on the identity element via the flight evidence. On the basis of that evidence, the District Court denied Giant’s motion for a directed verdict and allowed the case to go to the jury, which convicted Giant. On this record, and under this Court’s jurisprudence, I would affirm the District Court.
¶47 The fact is that Giant does not present the “reliability” question in the broad context in which the Court ultimately decides it. Instead, Giant first argues on appeal that, under White Water, Deborah’s prior inconsistent statements cannot be the sole evidence on which the jury could be allowed to determine that Giant was her assailant because the prior statements were unsworn. Under this Court’s cases, his argument is correct and I join the Court in so concluding.
¶48 Giant’s second argument is that the State’s flight evidence here is so “tenuous” that it is insufficient to corroborate Deborah’s prior inconsistent statements because flight evidence can be consistent with either guilt or innocence. The argument is based on Giant’s contention that the only flight evidence is that he went “to his parents in California right after the assault.” His argument does not raise the question the Court states is the issue presented in this case of whether flight evidence can be the sole corroboration of prior inconsistent statements.
¶49 In any event, the Court does not agree with Giant’s premise, namely, the “tenuous” nature of the flight evidence, and neither do I. Indeed, the Court states that the following “evidence of flight is undisputed[:]”
Giant was preparing to leave town when he withdrew all available cash from the couple’s savings accounts and credit cards and took the two younger boys, D. and M., to a hotel. The night of the assault, Giant kept the money and left the house. Later, Giant abandoned his truck with the license plates inside. Richardson contacted Giant on his cell phone five days after the assault and asked Giant to turn himself in. Giant refused and would not say where he was. Giant was at large for four months. When Giant turned himself in, he said he was tired of running.
This is significant and substantial flight evidence which, although circumstantial evidence going to Giant’s identity as Deborah’s assailant, corroborates her prior inconsistent statements as required by our cases.
¶50 The Court having implicitly rejected Giant’s argument that the flight evidence is “tenuous,” it is my view that the remainder of his argument, that the evidence is insufficient to corroborate Deborah’s *94 prior inconsistent statements, also must be rejected. At that point, our analysis having covered Giant’s arguments on appeal, we should affirm the District Court’s denial of Giant’s motion for a directed verdict. That our case law properly holds flight evidence can be consistent with innocence as well as guilt means only that it is insufficient on a stand-alone basis to support a conviction. Here, as corroboration of Deborah’s statements, it creates a jury question, and the same is true regarding the weight and credibility to be given Deborah’s direct and substantive evidence-via her numerous prior inconsistent statements-identifying Giant as her assailant.
¶51 In this latter regard, it is important to keep in mind the extent and timing of Deborah’s prior statements-inconsistent with her later trial testimony-about the June 5, 1998, assault. As the Court mentions, Deborah testified she possibly told a doctor at the hospital almost immediately after the assault that Giant was her assailant. In addition, her undisputed testimony was that she told doctors at the hospital the following day that her “husband did it.” That same day, she told police that Giant was her assailant. Aside from the “insufficient standing alone” issue, these statements made nearer in time to the incident could be considered by the jury to be more accurate and free from outside influences than those made later. Indeed, according to McCormick, § 251, 116 n.12, “[t]he fresher the memory, the fuller and more accurate it is.” It is my view that, because they were corroborated by substantial flight evidence, the jury was entitled to weigh Deborah’s prior statements, together with her trial testimony and credibility, and find beyond a reasonable doubt that Giant was the assailant.
¶52 My view is strengthened by an additional prior inconsistent statement of Deborah’s mentioned only in passing by the Court as one “only certain portions of which were read aloud.” It is true that Deborah read only certain portions of this additional statement during her testimony, admitting she swore to the statement before a notary; it is somewhat misleading, however, for the Court to omit the substance of these statements and the time frame in which they were made. Unlike the statements made so soon after the assault, Deborah made the following statements on December 18, 1998, more than six months after the assault:
Ed [Giant] committed an extremely violent and near fatal act on me on June 5, 1998.
He planned it out for a week and had everything organized to *95 carry out his plan to kill me.
Again, these numerous statements by Deborah, made to different people at significantly different times, are insufficient on a stand-alone basis to establish the identity element of the offense with which Giant was charged. Taken together with the substantial corroborating evidence of flight, however, it strikes me as beyond dispute that the evidence was sufficient to withstand a motion for a directed verdict which was based on insufficient evidence of the identity of Deborah’s assailant.
¶53 As Judge Learned Hand said in Di Carlo, “[i]f from all that the jury see of the witness, they conclude that what [s]he says now is not the truth, but what [s]he said before, they are none the less deciding from what they see and hear of that person and in court.” That is what the jury in this case determined with regard to Deborah’s trial testimony and her statements at earlier times, respectively, and-together with the substantial flight evidence-it is what the jury had a right to do after the District Court properly denied the motion for a directed verdict. Ignoring Giant’s actual arguments on appeal, the Court instead turns jury credibility and weight questions into a question of law, sua sponte and without any citation to authority, and concludes that all of the evidence of identity-taken together — was so inherently unreliable as to be insufficient to allow the case to go to the jury.
¶54 Moreover, the Court’s “zero and zero cannot make one” statement is insupportable on this record. There are no “zeroes” here. The Court simply disregards the fact that both direct and substantive evidence from Deborah near the time of the assault and later, and substantial flight evidence from Giant’s own conduct immediately after the assault, were presented by the prosecution.
¶55 I could not disagree more strongly with the Court’s approach and result in this case. I dissent.
JUSTICE RICE joins in the foregoing dissenting opinion.